# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jerry W. Heyn, Jr., being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Senior Special Agent of the U.S. Secret Service, and have been since September 29, 1997. I have attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, GA and the U.S. Secret Service Special Agent Training Course in Beltsville, MD. As part of my duties, I investigate criminal violations relating to threats against the President of the United States and other protectees of the Secret Service. I have received training and instruction in this field and have had the opportunity to participate in investigations relating to it.

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 307-640-3319, whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence and instrumentalities of violations of 18 U.S.C. 871(a) are located in the place described in Attachment A.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is: a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## FACTS IN SUPPORT OF PROBABLE CAUSE

6. On February 13, 2019, I reviewed an email from the USSS Los Angeles field office and learned the following. On February 13, 2019, Marcie Mavreles, a lead case manager at Cheyenne Regional Medical Center ("CRMC"), called the USSS Los Angeles field office and reported a patient at CRMC, Timothy Ryan Cessor ("Cessor"), had made threats to kill the President of the United States. Mavreles advised Cessor had been on a psychiatric hold since February 4, 2019. Mavreles reported Cessor had attempted to drive from Cheyenne to Washington D.C. with a firearm in his vehicle to "kill Trump and all members of Congress who support him."

7. I reviewed a Cheyenne Police Department report from February 4, 2019, by Officer Reemers, who interviewed Cessor and a member of the CRMC mental health evaluation unit ("the CRMC mental health professional") on February 4, 2019. The CRMC mental health professional had initiated an emergency detention on Cessor as a threat to himself and/or others. The CRMC mental health professional also interviewed Cessor and Cessor's father on February 4, 2019. The CRMC mental health professional provided information from these interviews to Officer Reemers.

8. In his report, Reemers summarized his interview with the CRMC mental health professional. As summarized in Reemers' report: "Timothy Cessor had been driving through Nebraska on the afternoon of Feb. 4th [2019]. About five hours into his trip, Cessor stopped to call his parents. He told them that he had a gun and was en route to Washington, DC to kill the president. Cessor's parents persuaded him to return to Cheyenne. Upon his return, his father . . . took and secured the gun and drove Timothy to CRMC. Timothy was admitted at about 1930 hours" (It is not clear from Officer Reemers' report whether this information originally came from Cessor, Cessor's father, or both).

9. In his report, Officer Reemers also summarized his interview with Cessor. As summarized in Reemers' report: "I learned that Cessor had been armed with a Smith & Wesson .40 Caliber pistol (model unknown) and two 13-rd magazines. The gun belonged to his father and he had taken it without his father's knowledge or permission. Cessor did not really have a coherent plan to kill the president. He had not considered the details or his chances of success. He had an urge to take immediate action. Cessor had not written any notes, letters or e-mails to explain or justify his actions. Cessor had no 'manifesto.' Cessor verbalized a list of grievances against President Trump."

10. On February 14, 2019, I reviewed emergency room notes by a CRMC emergency room doctor, which summarized information provided by "the patient and his family." According to the notes, Cessor presented with "anger homicidal ideation towards President Trump. Pt states, 'I went to kill Trump.' . . . His dad states the pt was driving on I-80 with the intent to cause harm, when the pt stopped in Nebraska and called him. He was able to convince the pt to come back for treatment. Pt states he does not want to harm anyone else 'unless they are helping him (Trump) or come to his aid.'"

11. On February 14, 2019, I interviewed Cessor's father by phone. Cessor's father provided the following information. Cessor called his father at about 2:00 pm on the afternoon of February 4, 2019. Cessor told his father that Cessor had left home armed with a gun and was going to take care of Trump. At the time of the conversation, Cessor told his father that Cessor was in Nebraska. Cessor said he could not do it and had called his father for help. Cessor's father persuaded Cessor to meet back at their house in Cheyenne, Wyoming. At the time Cessor's father received this call from Cessor, Cessor's father was working in Nebraska for the Air Force. Shortly after 5:00 pm, Cessor met his father and mother at their house in Wyoming and Cessor agreed to be driven to CRMC.

12. On February 14, 2019, I interviewed Timothy Cessor at the Cheyenne Regional Medical Center, Behavioral Health Unit. Among the statements made by Cessor are the following, in which he described his actions on February 4, 2019:

On 2/4/19, Cessor wrote Trump on the side of his truck and put a red X through it. He then stockpiled food and drinks in the truck and looked throughout his family's home for the keys to his father's gun safe, intending to take weapons from there. When he could not find the keys, he pried open a lockbox located under his parents' bed. Inside the lockbox, he found a .22 cal pistol and a .40 cal pistol. Cessor

said he took the loaded .40 cal pistol and an extra 13 round magazine and got in his truck. He said he looked up the location of the White House on his mobile phone's GPS and began driving to Washington, DC with the intention of going to the White House to kill the President. Cessor said he did not have a plan to kill POTUS but intended to go to the White House and see if he could get in a position to shoot him.

Cessor also gave his mobile telephone number as 303-920-1874 and said his father, Jeff Cessor, had the phone since his admission to the hospital on February 4, 2019. Cessor stated his email address was tcessor@gmail.com. Timothy Cessor then signed a U.S. Secret Service form 1922 Consent to Search for his property at his parents' home located at 3545 Stampede Ranch Road, Cheyenne, Wyoming. Among the items authorized for seizure from the premises were cellular telephones and other electronic devices.

13. On February 14, 2019, I met with Jeff Cessor at the family home, 3545 Stampede Ranch Road, Cheyenne, Wyoming and showed him the signed consent to search form executed by his son, Timothy Cessor. Jeff Cessor admitted me to the home and showed me Timothy's room, which, with his permission and in accordance with the consent to search, I search for evidence in connection with threats against the President and other USSS protectees. Not finding Timothy Cessor's mobile telephone, I asked Jeff Cessor for it. He then gave it to me. I asked Jeff Cessor for the pass code. He did not want to give it to me, but I watched him unlock the phone and remove the pass code from the device, unlocking it for any future examination.

14. Checks of mobile telephone number 307-920-1874 in available databases reveal that the carrier for this number is T-Mobile and that Jeff Cessor is listed as the account holder/subscriber. I know from my training and experience that cellular telephone carriers maintain historical records including, but not limited to call detail records, listing what telephone calls, text messages and other electronic communications were sent or received by a particular cellular telephone, as well as the details of the particular cellular towers that device communicated with and their locations. This information is likely to establish the location of Cessor's cellular telephone during the events of this investigation.

15. On February 15, 2019, I arrested Timothy Cessor in Cheyenne, Wyoming on an arrest warrant issued in the District of Nebraska for violation of 18 U.S.C. 871(a). Since that time, Cessor has remained in the custody of the U.S. Marshals Service pending his extradition to the District of Nebraska.

16. T-Mobile, the Provider, as described in Attachment A, maintains the records sought in this search warrant involving the number (307) 920-1874, as described in Attachment B. A preservation letter was provided to T-Mobile involving the number (307) 920-1874 on March 8, 2019.

17. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

18. Based on my training and experience, I know that T-Mobile can collect historical cell-site data about a target cell phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the target device's user or users and may assist in the identification of a fugitive, of co-conspirators, and/or victims.

## **AUTHORIZATION REQUEST**

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20. Affiant has probable cause to believe that the information to be obtained, as described in Attachment B, from the Provider described in Attachment A, will provide evidence of violations of federal law, including 18 U.S.C. § 871(a). The T-Mobile number (307) 920-1874 is Cessor's telephone number. Affiant has probable cause to believe that this was the number of the phone that Cessor was possessing when he traveled from Wyoming towards Washington D.C. on about February 4, 2019. Affiant has probable cause to believe that Cessor used the T-Mobile number (307) 920-1874 on about February 4, 2019 when he called his father and stated that he was going to take care of Trump. There is probable cause to believe that cellular site data involving the T-Mobile number (307) 920-1874 will indicate where Cessor traveled on about February 4, 2019. There is probable cause to believe that cell site data will indicate what path Cessor took when he traveled from Wyoming and began driving towards Washington D.C. There is probable cause to believe that cellular site data will indicate where Cessor was located when he spoke to his father on the phone and stated that he was going to take care of Trump. There is probable cause to believe that cellular site data will indicate where else Cessor stopped when he began traveling towards Washington and what route he took.

21. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items described in Attachment A for the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*s/ Jerry W. Heyn, Jr.*
Jerry W. Heyn, Jr.
Senior Special Agent, U.S. Secret Service

SUBSCRIBED and SWORN before me this 19th day of March, 2019.

_____
THE HON. SCOTT T. VARHOLAK
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by David Tonini, Assistant United States Attorney.